IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01011-DME-KMT


ROY ALLEN GREEN,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
WARDEN WILEY,
DR. LAWRENCE LAYVA (sic)( LEYBA), and
DR. NAFZIGER,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case involves a claim that Defendants violated Plaintiff's Eighth Amendment rights and his due process rights under the Fifth Amendment. This matter is before the court on 1) "Defendants' United States Bureau of Prisons, Warden Ron Wiley, and Dr. Steven Nafziger's Motion to Dismiss" (Doc. No. 26); and 2) "Defendant Dr. Lawrence Leyba's Motion to Dismiss Pursuant to § 12(b)(1) and (b)(6)" (Doc. No. 59).

      Plaintiff filed his Prisoner Complaint on May 15, 2007. (Compl.) On July 16, 2007, Circuit Judge Ebel filed an Order of Reference to United States Magistrate. (Doc. No. 12.) BOP, Warden Ron Wiley, and Dr. Steven Nafziger filed their motion to dismiss on September 25, 2007. (BOP.'s Mot.) Plaintiff filed his response on October 22, 2007. (Oppos. to Defendants [sic] Mot. to Dismiss [hereinafter "Resp. to BOP's Mot."].) Defendants filed their

1

reply on November 2, 2007. [Defs. United States BOP, Ron Wiley, and Dr. Steven Nafziger's Reply in Supp. of Their Mot. to Dismiss [hereinafter "BOP Reply"].) On February 21, 2008, Defendant Leyba filed his motion to dismiss. (Leyba's Mot.) Plaintiff filed his response on March 10, 2008. (Pl.'s Reply in Oppos. to Def. Leyba's Mot. to Dismiss [hereinafter "Resp. to Leyba's Mot."].) Dr. Leyba filed his reply on March 24, 2008. (Def. Leyba's Reply in Supp. of his Mot. to Dismiss [hereinafter "Leyba's Reply"].) This matter is fully briefed and ripe for review and recommendation.

Defendants filed their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (BOP.'s Mot.; Leyba's Mot.) Defendants assert that: (1) this court lacks jurisdiction over Plaintiff's official capacity claims as a result of sovereign immunity; (2) Plaintiff has failed to exhaust the claims under the PLRA; (3) Defendants are entitled to qualified immunity on the individual capacity claims; (4) the Complaint fails to state a claim for violation of either the Eighth Amendment or violation of Due Process; (5) Plaintiff's requests for injunctive and declaratory relief fail; and (6) the statute of limitations bars many of Plaintiff's claims. (*Id.*)

### STANDARD OF REVIEW

#### A.     *Pro Se Plaintiff*

The court notes at the outset that because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.    *Fed. R. Civ. P. 12(b)(1) - Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the

Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### C. Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pled factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the Court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citations omitted).

In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. The

issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *(overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). In evaluating a 12(b)(6) motion to dismiss, it is appropriate to look to whether the plaintiff has alleged each element necessary to establish a prima facie claim on which relief can be granted. *See Ruiz*, 299 F.3d at 1182-83; *Sutton v. United Air Lines, Inc*., 130 F.3d 893, 902-903 (10th Cir. 1997). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

"A 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P. ] 56.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).

In this case, both Defendants and Plaintiff have submitted documents outside the pleadings in support of their arguments. The documents, notably the plaintiff's voluminous medical records inappropriately submitted by defendants[1], are quintessentially evidentiary in

---

[1]Defendants have attached over 300 pages of exhibits, including Plaintiff's extensive medical records, with their motions to dismiss. The court notes the exhibits were not bates labeled or sequentially paginated in any way to assist the court in following the defendants'

nature.  The court concludes they are not appropriate as support for a Rule 12(b)(6) motion and

therefore specifically excludes consideration of the extraneous documents at this juncture of the

proceedings.

## *FACTUAL BACKGROUND*

### *A.    Plaintiff's Claims*

Plaintiff states that beginning in late May 2005 the defendants displayed deliberate

indifference to his medical needs and suffering by refusing to treat or diagnose his pre-existing

hepatitis, thereby causing him pain and the eventual development of irreversible fibrosis and

cirrhosis of the liver.  (Prisoner Compl. at 3 [filed May 15, 2007] [hereinafter "Compl."].)

Plaintiff asserts this constitutes cruel and unusual punishment and a violation of his due process

rights.  (*Id.*)  Plaintiff asserts claims for violation of his Eighth and Fifth Amendment rights.

(Compl. at 4–5.)  He names as defendants the Federal Bureau of Prisons; Warden Wiley, who

was warden at ADX Florence, Colorado and in charge of the prison where Plaintiff was

confined; Dr. Lawrence Leyba, who was a doctor at USP-Max; and Dr. Nafziger, who was a

doctor at USP-Max.  Plaintiff seeks money damages, injunctive relief, and declaratory relief.

(Compl. at 8.).         Plaintiff was originally committed to the custody of the Bureau of Prisons

[hereinafter "BOP"] on February 28, 2001, and was designated to USP Allenwood, Pennsylvania

---

argument, requiring needlessly time consuming "needle-in-the-haystack" searching.  In addition,
Defendants' motions to dismiss and replies in support of their motions to dismiss far exceed the
page limits set forth by Circuit Judge David M. Ebel in his pre-trial procedures.  The court could
strike the motions to dismiss for these reasons alone.  However, in the interest of resolving this
case in a more expeditious manner and considering that the extraneous materials will not be
relied upon in the court's review of the motions to dismiss, the court declines the invitation to
place form over substance in this case.  The court cautions Defendants that further failure to
follow procedures may result in documents being stricken.

[hereinafter "ALP"] until January 6, 2003. (Def. Dr. Lawrence Leyba's Mot. to Dismiss at 3 [filed February 21, 2008] [hereinafter "Def. Leyba's Mot."].)[2] He was then transferred to the ADX in Florence, Colorado, where he remained until June 29, 2007, when he was again transferred to USP Victorville, California [hereinafter "VIP"]. (*Id.*)

Upon his initial screening at ADX intake on January 16, 2003, Plaintiff was assigned to the infectious disease 'Chronic Care Unit'. Defendant Leyba reviewed and initialed the notes for essentially routine examinations by the PA beginning on February 9, 2003 (*Id.*) Plaintiff was removed from placement in the Chronic Care Unit sometime after February 2, 2005 because his medical condition was stable. (Compl., Ex. A at 13) Defendant Leyba resigned from BOP employment sometime around late May 2006. (Def. Leyba's Mot. at 13.) According to Defendants, he has had no involvement with Plaintiff's care since he left BOP, and the facts set forth in the Complaint support this allegation. (*Id.*) It is further undisputed that Defendant Nafziger joined BOP in January 2006, but did not treat inmates at ADX Florence until May 2006. (BOP.'s Mot. at 13.)

## B. Factual Allegations

Plaintiff states that on or about May 25, 2005, he sent a request for evaluation and treatment of his Hepatitis-C to Defendant Dr. Leyba due to pain, swelling, and fatigue. (Compl. at 5.) He claims the request was never answered, nor was he seen by medical staff in response to the request. (*Id.*) In approximately May 2005, Plaintiff began filing administrative remedy requests seeking treatment for Hepatitis C. (Compl., Exs. A, B) Plaintiff states after his first

---

[2]As noted, the court will consider jurisdictional facts submitted by the Defendants outside the Complaint where relevant to the Rule 12(b)(1) determination.

grievance at the local level, Warden Wiley responded by sending a request to the medical department to see Plaintiff. (Compl., Ex. A at 13) Plaintiff alleges the medical department still did not schedule him for an examination, and Defendant Wiley refused to require they do so. (Compl. at 5) Plaintiff took the original grievance through the four-step process (Compl., Ex. A at 14 - 17) and on January 12, 2006, the medical department (Defendant Dr. Leyba) was ordered to conduct an exam and evaluation for treatment of Plaintiff's hepatitis. *(Id.)* Plaintiff states Dr. Leyba did not do so. *(Id.)* On February 23, 2006, Plaintiff sent a request with a copy of the appeal and the response directing medical attention to Dr. Leyba, who thereafter saw Plaintiff on February 28, 2006, and ordered a Hepatitis A vaccination and a liver biopsy. *(Id.)* On November 19, 2006, Plaintiff states he was given a liver biopsy by Defendant Dr. Nafziger which showed extensive fibrosis and cirrhosis of the liver, which Plaintiff claims was caused by excessive delays. *(Id.)*

Plaintiff claims that in December 2006 the medical utilization committee and Defendant Dr. Nafziger recommended Plaintiff receive treatment with Interferon and Ribavirin. *(Id.)* In January 2007, Plaintiff saw Dr. Nafziger for a physical and was informed he would start treatments in two to four weeks. *(Id.)* On February 19, 2007, Plaintiff wrote to Dr. Nafziger to inquire as to why he had not started treatments and to complain of liver pain and symptoms. *(Id.)* According to Plaintiff, on March 30, 2007, Defendant Wiley advised him the forty-day delay was not excessive. *(Id.)* Plaintiff states that the BOP, Warden Wiley, and medical staff "discourage treatment of Hep. C in every way possible and allow . . . the development of irreversable [sic] liver disease and still deny standard accepted medical treatments that med. staff determined was medically necessary." *(Id.)*

**ANALYSIS**

*A.*     *Jurisdiction*

  *1.*     *Bivens Claims and Sovereign Immunity*

Defendants assert that Plaintiff's claims against all defendants in their official capacities as employees of the Federal Bureau of Prisons are barred because absent a waiver of the government's sovereign immunity, officials and employees of federal agencies may not be sued. (BOP's Mot. at 21–22; Leyba's Mot. at 21–22.)  "A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."  *Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D. Colo. 2001).  Plaintiff states, however, that he is suing Defendants Wiley, Leyba, and Nafziger in their individual capacities only.  (Resp. to BOP's Mot. at 9; Resp. to Leyba's Mot. at 2.)

A constitutional tort action for monetary damages cannot be maintained against the United States or its employees in their official capacities because there is no waiver of sovereign immunity for constitutional violations.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).  A suit against a government employee in his official capacity is barred by sovereign immunity unless a statutory waiver can be found.  *Meyer*, 510 U.S. at 475; *Pleasant v. Lovell*, 876 F.2d 787, 793 (10th Cir. 1989).  Likewise, a suit against a federal agency or federal officer in his/her official capacity is actually a claim against the United States, which cannot succeed without the consent of the sovereign.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

To the extent the plaintiff is bringing his constitutional claims against Defendants Wiley, Leyba and Nafziger in their individual capacities only, he must do so pursuant to *Bivens v. Six*

*Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) as discussed more fully Section B(1) herein. "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001). "The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Id. See also, Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity–not . . . against officials in their official capacity"); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claim for damages against a federal defendant in his official capacity is treated as a claim against the United States).

This court recommends, therefore, that all claims against the Bureau of Prisons be dismissed as barred by sovereign immunity depriving the court of jurisdiction. Further, this court recommends that all claims against Defendants Wiley, Leyba, and Nafziger, if any, in their official capacities be dismissed for lack of subject matter jurisdiction as a result of sovereign immunity.

### 2. *Failure to Exhaust Administrative Remedies*

Plaintiff alleges that he has exhausted the administrative remedy process allowing him to go forward with his claims in this federal court. (Compl. at 7). In support of such contention, he attaches Exhibits A and B showing administrative progression. Defendants dispute that the administrative process engaged in by Plaintiff meets the parameters of Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), requiring all

inmates to exhaust "such administrative remedies as are available" prior to initiating suit over

prison conditions. (BOP's Mot. at 22-24; Leyba's Mot. at 22 - 26) "Exhaustion in cases

covered by § 1997e(a) is now mandatory. . . . Thus federal prisoners suing under *Bivens* . . . must

first exhaust inmate grievance procedures . . . ." *Porter v. Tussle,* 534 U.S. 516, 524 (2002).

The Defendants allege, "[t]he BOP maintains a four-step administrative remedy program,

by which inmates such as Mr. Green may raise grievances. 28 C.F.R. § 542.10 et seq." (BOP's

Mot. at 24; Leyba's Mot. at 23) Attached to the Plaintiff's Complaint are documents which

appear to represent two complete four-step grievance procedures. (Compl., Exs. A and B). The

Defendants apparently claim that the process in which Mr. Green engaged was somehow

different from the grievance process which would satisfy the required administrative remedy,

stating, "appealing to officials within BOP is not equivalent to filing a grievance

against the official alleging specific constitutional violations." (BOP's Mot. at 26; Leyba's Mot.

at 27).

Examining the Complaint in the light most favorable to the plaintiff, the court cannot

conclude at this point in the case that Mr. Green's attempts at satisfying the grievance procedure

were ineffective or incomplete. Therefore, it is recommended that the court deny the defendants'

motions to dismiss on this basis.

### 3.	Statute of Limitations

The parties do not dispute the applicable statute of limitations is found in Colorado

Revised Statutes § 13-80-102, which provides for a two-year statute of limitations in such

actions. *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (applying § 13-80-102 to

§ 1983 claim); *Appleby v. Catron*, No. 03-1413, 2003 WL 22905232 at 1 (10th Cir. 2003)

(applying two-year statute of limitations in *Bivens* action arising in Colorado); *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1221 (D. Colo. 2001). Therefore, any claims arising prior to May 16, 2005 are time-barred. Plaintiff states, "Plaintiff only alledges (sic) in his suit the denial of treatment begining (sic) 5/25/05, though the failure previous to then should be considered by this court and a jury at trial as evidence of the defendants continous (sic) deliberate indifference (sic), cruel and unusual punishment and denial of due process." (Resp. to BOP's Mot. at 2-3).

Therefore, this issue is moot.

### 4. *Injunctive and Declaratory Relief*

Plaintiff's Complaint does not contain a separate and independent claim for injunctive or declaratory relief, however his Prayer for Relief indicates that he is seeking an "order that Plaintiff receive Interferon/Ribavirin treatment for his hepatitis or any other medically necessary treatments for the same." (Compl. at 8).

It is not disputed that plaintiff is no longer residing at ADX in Colorado. "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot-i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), superseded by statute on other grounds as stated in *Walker v. UPS Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). A claim will be "deemed moot unless a proper judicial resolution settles some dispute which affects the behavior of the defendant toward the plaintiff." *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999) To the extent the plaintiff attempted to state a claim for injunctive relief, therefore, his claim must be denied. *Smith v. Tharp*, 97 Fed. Appx. 815, 818 (10th Cir. 2004); *Love v. Summit County*, 776 F.2d 908, 910, n.4,

912 (10th Cir. 1985) (the general rule of mootness applies to a transfer between prisons); *Smith v. Johnson*, 2006 WL 1581740, at *1 (D. Colo. 2006).

Similarly, Plaintiff's Prayer for Relief invites the court to declare that his constitutional rights have been violated. (Compl. at 8) Declaratory relief is equitable and courts will ordinarily not allow a plaintiff to seek injunctive or declaratory relief in an action seeking redress for constitutional violations. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). A plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, however the plaintiff cannot maintain a declaratory action unless he demonstrates a good chance of being likewise injured in the future. *Id.* The plaintiff has not sufficiently pled a claim for declaratory relief, has not made any showing of entitlement to declaratory relief, and has not claimed or set forth facts showing that subsequent to his transfer from Colorado he is suffering the same constitutional violations alleged in this case. To the extent this is a claim at all, the court lacks jurisdiction I recommend the claim be dismissed. *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1420 (10th Cir.1990).

### B. *Sufficiency of Complaint*

Given that the Bureau of Prisons should be dismissed altogether in the case and the claims against the three individual defendants in their official capacities should likewise be dismissed, the plaintiff must approach his claims of constitutional violation against Defendants Wiley, Leyba and Nafziger only in their individual capacities.

The Supreme Court has recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "To establish a *Bivens* cause of action, a

party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan.1998) (citing *Bivens*, 403 U.S. at 388).

### 1. Due Process

Due process is only constitutionally guaranteed when a person is deprived of life, liberty or property. *Templeton v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). As stated above, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. "Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Id.*

In this case, Plaintiff fails to state any alleged deprivation of due process or any due process to which he should have been entitled but did not receive. (See Compl. at 5) Moreover, Plaintiff has failed to state any loss of life, liberty or property. Plaintiff did attach his inmate appeals forms, but the court finds the documents insufficient to make a discernible claim for a deprivation of his due process rights. It appears, instead, that Plaintiff was accorded speedy, efficient due process on each of his grievances. Accordingly, Plaintiff's due process claims do not state a claim upon which relief can be granted and this court recommends this claim be dismissed.

## 2.     Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U .S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, e.g., whether the medical need of the prisoner is "serious," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and a subjective component, e.g., whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  In order to assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, a plaintiff must demonstrate: (1) he suffered objectively serious medical needs, and; (2) the prison officials actually knew of and deliberately disregarded those needs.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (two-pronged standard "requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious"); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (same).

The subjective component follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  *Farmer*, 511 U.S. at 834.  An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference

requires a higher degree of fault than negligence or even gross negligence. *Berry v. Muskogee*, 900 F.2d 1489, 1495–96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496. The Supreme Court explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Farmer*, 511 U.S. at 837.

As noted in the previous factual summary, Plaintiff alleges that due to pain, swelling and fatigue, he sent a request for an evaluation and treatment of his Hepatitis-C to then Clinical Director, Defendant Leyba, in May of 2005. (Compl. at 4.) While waiting for Dr. Leyba to respond to his treatment request, Plaintiff claims he carried on with his grievance procedure which resulted in Defendant Wiley requesting the medical department see him on July 18, 2005. (*Id.*) Still, without any treatment since May 2005, Plaintiff claims on January 12, 2006, in response to a highest level grievance, Defendant Leyba was ordered to conduct an exam and evaluation for treatment, which he also failed to do. (*Id.*) Finally, on February 23, 2006, Plaintiff alleges that he sent a request, with a copy of the appeal and response to Defendant Leyba, and was finally seen by Defendant Leyba on February 28, 2006, when a Hepatitis-A vaccination and liver biopsy were ordered but no date scheduled for the biopsy. (*Id.*) Plaintiff alleges that after numerous delays, he finally received a liver biopsy on November 19, 2006, which he claims was

"botched".  (*Id.*)  Plaintiff alleges that the results of the biopsy show that due to excessive delays, he has extensive and irreversible fibrosis and cirrhosis of the liver.  (Compl. at 5.)

As to Dr. Nafziger, Plaintiff alleges that in addition to Dr. Nafziger actually getting the liver biopsy accomplished, in December 2006, the medical utilization committee and Defendant Nafziger recommended he receive treatment with Interferon and Ribavirin to stop the fibrosis and cirrhosis. (*Id.*)   From November 2006 to February 2007, the factual allegations of the Complaint show regular medical treatment and review on at least a monthly basis.

Accepting the factual rendition as set forth by the plaintiff in the Complaint as true, the court must determine if the facts support a claim that defendants Waley and/or Leyba and or Nafziger violated the Eighth Amendment in that, 1) Mr. Green had a serious medical condition, and, 2) that the officials acted with a sufficiently culpable state of mind by not responding and treating the defendant for his Hepatitis-C between May, 2005 until March 2007, a period of almost two years.  In sum, with respect to defendant Leyba, the Complaint sets forth facts that between May, 2005 and February 28, 2006, a nine month period, in spite of the Warden's directives and other directives issued as a result of Plaintiff's grievances, Defendant Leyba failed to render any medical treatment to plaintiff.  Once Defendant Nafziger took over the medical needs of ADX prisoners, the Plaintiff claims that in November, 2006 he received a liver biopsy, in December, 2006, Dr. Nafziger was part of a medical utilization committee which recommended plaintiff receive treatment with Interferon and Ribavirin, in January, 2007 he received a physical examination from Dr. Nafziger, and he was evaluated for the treatment by psychology personnel in February, 2007.

A "sufficiently culpable state of mind," as required for stating a deliberate indifference claim under the Eighth Amendment, means "defendant(s) knew [plaintiff] faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (citations and quotations omitted).

In addition to Plaintiff's rendition of the course of his disease and treatment while at ADX, the exhibits to the Complaint, show that the plaintiff was forced to file grievance after grievance with local, regional and national BOP employees in order to obtain basic healthcare related to his Hepatitis-C, and that, even if directly ordered to do so, Defendant Leyba many times did not comply with health care orders. Defendants Leyba and Nafziger are both alleged to be medical doctors, charged with the care and treatment of the many federal prisoners within the Bureau of Prisons, specifically, at ADX during the relevant time periods. As such it is reasonable to infer, and to credit Plaintiff's Complaint with the inference that Hepatitis-C, left untreated, can cause and exacerbate serious liver dysfunction and could have been the cause of Plaintiff's pain complaints.

A delay in medical care can constitute "an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm" and such harm may be shown by proof that "considerable pain" resulted from the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Plaintiff's Complaint set forth facts stating he was in considerable pain and the results of his liver biopsy show irreversible damage to his liver. Deliberate indifference involves both an objective and a subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Farmer*,

511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

Activity which may state a claim for medical malpractice or negligence does not reach the level of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment). "A fortiori, a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos*, 639 F.2d at 575 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)).

It is undisputed that Defendant Leyba was the physician in charge of the plaintiff's care from May 2005 until Defendant Leyba resigned from employment with BOP in or around late May 2006. (See BOP.'s Mot. at 13). After Defendant Leyba resigned in late May 2006, Defendant Nafziger began treating inmates at ADX Florence, Colorado. *Id.* Plaintiff alleges that, among the other facts set forth herein and in the Complaint, Defendant Leyba ordered a Hepatitis-A vaccination and a liver biopsy on February, 23, 2006, but Plaintiff did not get the liver biopsy until Dr. Nafziger was the physician in charge. (*Id.*)

"[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. However, "a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Id.* at 843-43. This court finds that Plaintiff has set forth facts supporting the elements of a violation of the Eighth Amendment against Defendant Leyba. However, the plaintiff has not set forth facts supporting the elements of a violation of the Eighth Amendment against Defendant Nafziger.

The plaintiff also has not set forth elements supporting an Eight Amendment violation against defendant Wiley. "A supervisor is not liable under section 1983 unless an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988). Under *Bivens*, liability for a constitutional violation can be predicated only on a defendant's actual and knowing participation in the alleged unconstitutional conduct. *Gates v. Unified Sch. Dist. No. 449 of Leavenworth County*, 996 F.2d 1035, 1042 (10th Cir. 1993). Persons without personal involvement or participation in the alleged unconstitutional acts therefore must be dismissed as *Bivens* defendants. *See Rizzo v. Goode*, 423 U.S. 362, 372-373 (1976) (case brought pursuant to 42 U.S.C. § 1983. Wiley's only involvement in this matter involved review of Plaintiff's first level Administrative Appeal. Exhibits A and B to Plaintiff's Complaint shows that Defendant Wiley was responsive to Plaintiff's requests and directed action by the medical department. The only facts in the Complaint alleged against Defendant Wiley show that Warden Wiley did respond to Plaintiff's request for medical attention and that he relied upon the medical personnel to advise him of the proper course of care and treatment of the plaintiff. Wiley is not alleged to be a medical

professional and there are no grounds to believe that Wiley knew or should have known that taking the medical professional's advice with respect to the health care provided was anything other than completely reasonable.  Taking all alleged facts as true, the plaintiff has failed to show that defendant Wiley  disregarded a known or obvious risk that was very likely to result in the violation of a prisoner's constitutional rights.

### 3.   *Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne,* 526 U.S. 603, 614-615 (1999) (quoting, *Harlow v. Fitzgerald*, 457 U.S.800, 818 (1982)).  *See also Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999) (recognizing that the administration of medical care to an inmate is a discretionary function). In practice, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow* at 819).

The Supreme Court has held

"[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Anderson* at 640; *see also United States v. Lanier*, 520 U.S. 259, 270 (1997).

While qualified immunity is an affirmative defense, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). At this stage of the proceedings, however, the court must review the assertion of qualified immunity raised by defendant Leyba under the provisions of Rule 12(b)(6) and not pursuant to the more complete summary judgment analysis. The court must accept the plaintiff's version of the facts as true, without reference to other submitted materials. *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 517 (10th Cir. 1998).

Whether defendant Leyba is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007). When a defendant asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the defendant's conduct violated a constitutional right. At this stage in the proceedings, this court has found that Plaintiff has sufficiently set forth a claim for an Eighth Amendment violation against defendant Leyba such as to entitle him to proceed with the lawsuit. Having found the constitutional claim sufficiently presented, the court must now consider whether the right was clearly established at the time of the alleged violation. *Wilson*, 526 U.S. at 609; *Anderson*, 483 U.S. at 639. In the most elementary of terms then, the violation alleged by the plaintiff must be such that a reasonable person would have understood the conduct in question to be in contravention of the Constitution at the time the alleged violations occurred. *Wilson*, 526 U.S. at 609; *see also Butler v. Prairie Village*, 172 F.3d 736, 745 (10th Cir. 1999); *Romero v. Fay*, 45 F.3d 472, 1475 (10th Cir. 1995). This inquiry, it is vital to note, must be undertaken in light of

the specific context of the case, not as a broad general proposition.  *Id.  See, e.g., Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  *Overdorff v. Harrington*, 268 F.3d 1179, 1185-86 (10th Cir. 2001); *Lucero v. City of Albuquerque*, 77 Fed.Appx. 470, 475 (10th Cir. 2003).  Once the district court determines that the right at issue was "clearly established," it becomes defendant's burden to prove that his conduct was nonetheless objectively reasonable. *Cannon v. City & County of Denver*, 998 F.2d 867, 874 (10th Cir. 1993).

Qualified immunity precludes the imposition of liability for "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Where government officials "of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id*. at 341.  At the same time, where the right is clearly established, a defendant should only "rarely" be able to succeed with a qualified immunity defense. *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1251 (10th Cir. 2003). *See also V-1 Oil Co. v. Wyoming Department of Environmental Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990). "The circumstances must be such that the defendant was so 'prevented' from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." *Roska*, *id*; *Cannon*, 998 F.2d at 874.

Although Defendant Leyba's motion states, "[t]he complaint shows that Plaintiff received diagnostic care, but he apparently wants specified treatment on his desired schedule. . ." (Leyba's Mot. at 34), that is not what the factual averments in the Complaint show.  It is the evidentiary submissions by the Defendants, which the court may not consider pursuant to Fed. R. Civ. P. 12(b)(6), which might show sufficient diagnostic care.  Since review of these outside sources is improper given that defendant chose to file a motion to dismiss premised on Rule

12(b)(6) instead of a Rule 56 motion, the court must review the allegations solely on the basis of the Complaint and the information therein. Taking the allegations in the Complaint as true, this court concludes the plaintiff has met his "heavy two-part burden" sufficiently to disallow the defense of qualified immunity for Defendant Leyba at this time. *Overdorff*, 268 F.3d at 1186.

According to the Complaint, knowing that the plaintiff was afflicted with Hepatitis C, defendant Leyba willfully refused to administer medical care to plaintiff from at least May 2005 until February, 2006. According to the Complaint, defendant Leyba refused medical care to the plaintiff even after Warden Wiley sent a directive to the medical department to schedule an appointment for the plaintiff (Compl., Ex. A at 13), Michael K. Nalley, Regional Director for the BOP responded to a grievance that plaintiff would be assessed during a future scheduled appointment, (Compl., Ex. A, at 15) and after Harrell Watts, Administrator of National Inmate Appeals for the BOP, directed that the plaintiff be administered additional lab tests to determine whether he should be treated with interferon and ribavirin treatment and given a liver biopsy (Compl., Ex. A at 17). If true, as the allegations must be presumed to be, defendant Leyba's actions were manifestly unreasonable and disqualify him from reliance on qualified immunity. This finding, however, does not preclude reconsideration of this issue under a different standard of review such as Fed. R. Civ. P. 56. WHEREFORE, for the foregoing reasons, the court respectfully

### *RECOMMENDS:*

1.     "Defendants' United States Bureau of Prisons, Warden Ron Wiley, and Dr. Steven Nafziger's Motion to Dismiss" (Doc. No. 26) be GRANTED.

2.    "Defendant Dr. Lawrence Leyba's Motion to Dismiss Pursuant to § 12(b)(1) and (b)(6)" (Doc. No. 59) be GRANTED in part and DENIED in part.  It is recommended that:

a) All claims against Defendant Leyba in his official capacity be dismissed;

b) The claim against Defendant Leyba in his individual capacity for violation of Plaintiff's Due Process rights be dismissed;

c) The claims, to the extent any were made, for injunctive and declaratory relief against Defendant Leyba be dismissed; and

d) As to the claim for violation of the Eighth Amendment against Defendant Leyba, Defendant Leyba's Motion to Dismiss be DENIED.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known as 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. U.S.*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 24th day July of 2008.

BY THE COURT:

s/ Kathleen M. Tafoya
KATHLEEN M. TAFOYA
United States Magistrate Judge