IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-1011-DME-MEH

ROY ALLEN GREEN,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, WARDEN WILEY, DR. LAWRENCE LAYVA (sic) (LEBYA), and DR. NAFZIGER,

    Defendants.

## ORDER

This case is before this court upon objections to Magistrate Judge Tafoya's Report and Recommendation granting in part and denying in part the defendants' motions to dismiss. (See Docs. 76, 77, 83, 84, and 86.) Plaintiff, Roy Allen Green, brought this Bivens action alleging that a federal prison and its officials deprived him of his constitutional rights under the Fifth and Eighth Amendments by denying him medical treatment for Hepatitis C and related complications. The defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Magistrate Judge Tafoya issued a Report and Recommendation that this court dismiss all of Green's claims except for his individual capacity Eighth Amendment claim against Dr. Lebya. Defendants appealed the Magistrate Judge's Report and Recommendation (Doc. 77), and

1

both parties have submitted objections to the Magistrate's findings. (Docs. 83, 84, and 86.)

This court agrees with the Magistrate Judge's recommendation to dismiss all claims against the United States Bureau of Prisons ("BOP") and all the official capacity claims. However, this court finds that Green has alleged enough facts to state a claim against Warden Wiley, Dr. Nafziger, and Dr. Lebya in their individual capacities under both the Fifth and Eighth Amendments. Therefore, this court ADOPTS in part and REJECTS in part Magistrate Judge Tafoya's Report and Recommendation.

This court also agrees with Magistrate Judge Tafoya's decision to ignore the extraneous evidence submitted by both parties, and to treat this as a motion to dismiss. (Doc. 76 at 5-6.) Both parties have raised factual issues that cannot be resolved without further discovery. See Tholen v. Ostler, 2008 WL 4446673, *11 (D. Utah 2008) (declining to convert a motion to dismiss into a motion for summary judgment on an issue that was "premature in light of outstanding discovery"). For example, they dispute the extent and adequacy of the treatment Green was given, whether he complied with his treatment, and whether the delay materially affected his condition. Summary judgment would, therefore, be premature. Further, this court has previously stayed Green's requests for additional discovery pending the court's decision in this motion to dismiss. (Doc. 47.) Given that Green is proceeding pro se, this court will not surprise him by converting defendants' motion to dismiss into a motion for summary judgment without allowing Green the opportunity to conduct discovery.

Obviously, this court may still consider the documents attached to plaintiff's complaint. <u>See</u> <u>Pace v. Swerdlow</u>, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (considering documents attached to plaintiff's complaint when addressing a motion to dismiss).

**I. Background**

Green suffers from Hepatitis-C, and has developed both cirrhosis and fibrosis, complications often associated with Hepatitis-C. Green was transferred to federal Administrative Maximum ("ADX") prison in Florence, Colorado in January 2003. (Doc. 26 at 3.) All the named defendants have been, at least at some time during Green's incarceration, employed at ADX Florence. Green claims that in May 2005, he began requesting treatment for his Hepatitis-C. (Doc. 3 at 4.) He alleges that his requests were routinely ignored, and his treatment was substantially delayed. Green filed this claim in April 2007, and alleges that by that time, he had yet to receive any treatment for his condition. Green alleges that the medical staff and warden at ADX Florence were aware of the seriousness of his condition, and their failure to provide appropriate treatment substantially exacerbated his illness. He specifically names the Federal Bureau of Prisons (BOP), Drs. Lebya and Nafziger, and Warden Wiley as the parties responsible for his mistreatment.

## II. Standard of Review

The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiff." Lindsey v. Bowlin, 557 F. Supp.2d 1225, 1226 (D. Kan. 2008) (citations omitted). This Court will dismiss a complaint under Rule 12(b)(6) "only if the complaint lacks 'enough facts to state a claim to relief that is plausible on its face.'" Van Zanen v. Qwest Wireless, L.L.C., 552 F.3d 1127, 1129-30 (10th Cir. 2008) (quoting Bell Atl. Corp. v. Twombley, __U.S. __, 127 S.Ct. 1955, 1974 (2007)).

When addressing a motion to dismiss a pro se plaintiff's claim, dismissal is "proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001) (quoting Perkins v. Kan. Dep't of Corrs., 165 F.3d 803, 806 (10th Cir. 1999)).

**III. Sovereign Immunity**

This court agrees with Magistrate Judge Tafoya's recommendation to dismiss Green's claim against the BOP and the official capacity claims Green brought against the other defendants. (See Doc. 26 at 21-22.) The BOP and the defendants in their official capacities enjoy sovereign immunity from Bivens actions. See Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP."); Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A Bivens action may not be brought against federal agencies or agents acting in their official capacities."). Sovereign immunity removes a court's jurisdiction over a complaint. See Governor of Kansas v. Kempthorne, 516 F.3d 833, 846 (10th Cir. 2008) (noting "the strict jurisdictional nature of sovereign immunity"). This court therefore lacks jurisdiction over Green's Bivens claims against the BOP and Green's claims against the other defendants in their official capacities.

This court would, however, have jurisdiction over claims for injunctive and declaratory relief against the BOP and the other defendants in their official capacities. See Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1231-36 (10th Cir. 2005) (holding that federal court had jurisdiction over a prisoner's claim for an injunction to force the BOP and prison officials acting in their official capacities to provide the prisoner with dental care). Any such requests would be moot, however, because, as Green concedes, he is now receiving the treatment he has requested. (See Doc. 86 at 1-2.) A claim for injunctive relief

against the government is moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 288 n.10 (1982). In this case, Green's claim is fundamentally based upon the timeliness of his treatment. Now that the BOP has begun treating him, a delay in his treatment "could not reasonably be expected to recur," and it is impossible for this court to fashion additional injunctive relief based upon Green's claim. Any claims for injunctive relief are, therefore, moot.

**IV. Failure to State a Claim**

    A. Due Process

Magistrate Judge Tafoya found that Green had failed to state a claim for a deprivation of his due process rights because Green did not adequately allege "any loss of life, liberty, or property." (Doc. 76 at 14.) The Due Process Clause protects incarcerated individuals against any "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Davis v. Bruce, 2008 WL 5156320, at *2 (D. Kan. 2008) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Even where a plaintiff's allegations are covered by the Eighth Amendment, the Due Process Clause provides independent protection. See Collins v. City of Harker Heights, 503 U.S. 115, 127-28 (1992) ("We have held, for example, that apart from the protection against cruel and unusual punishment provided by the Eighth Amendment, the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal

6

standards for pretrial detainees, for persons in mental institutions, for convicted felons, and for persons under arrest.") (emphasis added; citations omitted).

This court finds that, to the extent that Green has adequately alleged an Eighth Amendment claim, those facts also give rise to a Fifth Amendment due process claim. The precise contours of a prisoner's Due Process rights with regards to the conditions of his confinement are determined by the principles guiding this court's Eighth Amendment analysis. See Barney v. Pulsipher, 143 F.3d 1299, 1310 n.10 (10th Cir. 1998) ("Although plaintiffs generally invoke other constitutional amendments in their complaints, their claims concerning conditions of confinement 'remain[ ] bounded by the Eighth Amendment, the explicit textual source of constitutional protection in the prison context.' Adkins v. Rodriguez, 59 F.3d 1034, 1037 (10th Cir. 1995)."). This court's discussion of Green's Eighth Amendment claim will, therefore, also suffice to address Green's due process claim. See Sawyer v. Green, 2008 WL 2470915, *2 n.2 (10th Cir. June 20, 2008) (noting that it does not matter whether the alleged violations occurred while plaintiff was a pre-trial detainee protected by the Due Process Clause, or an imprisoned convict protected by the Eighth Amendment because "the analysis does not change").

B. Cruel and Unusual Punishment

Green claims that the prison's warden and medical staff violated his Eighth Amendment rights by failing to provide appropriate and timely treatment for his Hepatitis-C. "A prison official's deliberate indifference to an inmate's

serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).

> "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980) (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). The "deliberate indifference" standard applies to allegations of "inadequate or delayed medical care." Oxendine, 241 F.3d at 1276 (emphasis added). A substantial delay in medical treatment constitutes an Eighth Amendment violation where prison officials are aware of the pain or increased damage that may result from such delay. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (reversing grant of summary judgment for defendants on prisoner's claim that defendants wrongfully delayed prisoner's dental treatment for over three months where defendants knew the delay would exacerbate plaintiff's dental problems).

This court will separately address defendants' general arguments for dismissal and their arguments for the dismissal of the claims against specific defendants.

8

### 1. General Arguments

Defendants argue that they lacked the requisite intent to satisfy the subjective component of an Eighth Amendment claim. (Doc. 26 at 31-35.) This court finds that Green has sufficiently alleged that the defendants knew that he was facing a "substantial risk of harm." Oxendine, 241 F.3d at 1276. In his complaint, Green claims that he complained to the medical staff of "pain, swelling, and fatigue" in relation to his Hepatitis-C. (Doc. 3 at 4.) Further, in the administrative complaints attached to, and incorporated in, Green's complaint, Green repeatedly brought the seriousness of his condition to the defendants' attention. For example, in his first administrative complaint, Green informed defendants that Hepatitis-C is a "life-threatening disease," that he was suffering from many of Hepatitis-C's known side-effects, and that current medical practice advocated treatment with Interferon/Ribavirin. (Doc. 3 at 11.) Regardless of when the evidence will show that the defendants first acquired the requisite knowledge, Green's frequent administrative complaints were more than sufficient to state a claim with regards to the defendants' knowledge of the substantial risks Green faced.

The defendants also argue that Green's complaint should be dismissed because he only "conclusorily and generically alleges harm." (Doc. 77 at 3.) The Supreme Court has recently upheld a prisoner's § 1983 complaint against prison officials for terminating his Hepatitis-C treatment that alleged very similar types of harm. See Erickson v. Pardus, 127 S.Ct. 2197, 2199 (2007). In Erickson, the plaintiff alleged that prison officials had wrongly terminated his

treatment with Ribavirin and Interferon (the very drugs that Green seeks to be treated with) after he failed to return one of the needles used to self-administer the drugs. In that case, the Tenth Circuit concluded that the plaintiff had failed to allege a claim because his allegations of life-threatening effects from his termination were "conclusory" and because he was given a hearing to challenge the prison's determination that he was misusing the needles. See Erickson v. Pardus, 198 Fed. Appx. 694, 699 (10th Cir. 2006). The Supreme Court overturned the Tenth Circuit's decision, holding that the pro se plaintiff's allegations that the prison's termination of his treatment was "endangering his life" and that he was "still in need of treatment" were "enough to satisfy Rule 8(a)(2)." Erickson, 127 S.Ct. at 2200.

The plaintiff in this case has alleged harms that are very similar to the harms alleged in Erickson. He alleges "due to excessive delays I have extensive fibrosis and chirocis (sic)." (Doc. 3 at 4.) Green also attached the documents from his administrative complaints, which contain allegations that "every day of delay adds further irreparable damage to my liver." (Doc. 3 at 32.) These allegations are sufficient to satisfy Rule 8.

Defendants also argue that Green has merely alleged disagreement with the prison's course of treatment, which is inadequate to state a Bivens claim. (Doc. 26 at 34.) Defendants point to the Tenth Circuit's unpublished opinion in Free v. Unknown Officers of Bureau of Prisons, 103 Fed. Appx. 334, 337 (10th Cir. 2004) in support of this defense. In Free, the Tenth Circuit upheld the district court's dismissal of plaintiff's Bivens action where the appellant "merely

disagree[d] with medical staff about the course of his treatment." Id. That case is inapposite, however, because Green does more than disagree with the prison's approach to his medical treatment. Green alleges that, not only did the defendants fail to provide him with his desired treatment, they completely failed to treat him for over a year. Further, he points to the defendants' neglect to even conduct the appropriate testing in order to be able to determine the proper course of treatment. These allegations go far beyond mere disagreement over the most appropriate treatment.

The defendants also argue that Green's claim should be dismissed because Hepatitis-C is a complex disease, and the lengthy testing period was necessary to evaluate the proper course of treatment. (Doc. 26 at 19-20; 29-30.) However, Green alleges that for extended periods of time, he did not even receive any tests, let alone treatment. (Doc. 3; Doc. 39 at 10-11.) These factually different accounts cannot be resolved during a motion to dismiss. Further, the length of time that elapsed before the prison was prepared to treat Green was too long to be justified by the necessity of testing.

### 2. Dismissal of Specific Defendants

#### A. Warden Wiley

Magistrate Judge Tafoya recommended that this court dismiss the claims against Warden Wiley because he was merely the supervisor and did not personally participate in Green's (non)treatment. (Doc. 76 at 20-21.) In general, "[a] defendant may not be held liable merely because of his or her

11

supervisory position. Grimsley v. MacKay, 93 F.3d 676, 679 (10th Cir.1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993)." Rodriguez v. Colo. Dep't of Corrs. at Buena Vista Corr. Complex, 2008 WL 2787051, at *4 (D. Colo. 2008) (emphasis added).

This court finds that Green has alleged facts which, if true, are sufficient to establish Warden Wiley's personal participation in the prison's failure to properly treat Green. First, the complaint alleges that Warden Wiley was made personally aware of Green's mistreatment through the administrative grievance process, and failed to take appropriate actions. Warden Wiley responded to Green's first administrative complaint in July 2005, and informed Green that he should use the sick call process to obtain treatment. (Doc. 3 at 13.) Warden Wiley became involved in Green's administrative proceedings again in November 2006, when defendant complained that, despite his repeated use of the "sick call" process, the prison had failed to treat him. Warden Wiley responded by informing the defendant that a liver biopsy had been arranged, and would be conducted "in the future." (Doc. 3 at 28.) Despite Warden Wiley's assurances, however, by April 2007 Green had still not received treatment. Without more information about Hepatitis-C and the appropriate method for its treatment, this court determines that Warden Wiley's failure to take a more proactive stance in Green's treatment even after he was informed that Green had not been adequately treated more than a year after his initial complaint

12

reached the Warden may be sufficient to make Warden Wiley personally liable. See Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988) (holding that a sheriff may be personally liable for the plaintiff's mistreatment in jail, stating that "a sheriff is accountable in a § 1983 action whenever a sheriff, in a position of responsibility, knew or should have known of the misconduct, and yet failed to prevent future harm") (quoting Anthony v. Baker, 767 F.2d 657, 666 (10th Cir. 1985)) (emphasis added).

Warden Wiley may also be personally liable if Green's allegation that the prison staff systematically refused to treat Hepatitis-C is true. (See Doc. 3 at 4; id. at 29.) The systematic refusal of necessary treatment may be sufficient to establish a warden's liability. See Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998) ("If the warden were aware of a systematic lapse in enforcement of a policy critical to ensuring inmate safety, his failure to enforce the policy could violate the Eighth Amendment."). Thus, without further discovery, it would be premature to dismiss Warden Wiley from this case.

### B. Dr. Nafziger

The defendants state that once Dr. Nafziger took over Green's treatment in June 2006, Green received adequate and timely treatment. (Doc. 26 at 13.) On June 7, 2006, Dr. Nafziger ordered labs to be completed before giving Green a liver biopsy. Defendants concede that Dr. Nafziger then apparently waited more than four months before ordering the biopsy. (Id.) Green further alleges that, even after Dr. Nafziger found some disturbing results in the biopsy, he had

13

still not begun treating Green by the time Green filed his complaint in April 2007.[1]  Finally, Dr. Nafziger was not operating in a vacuum; he knew that Green had been seeking treatment for Hepatitis-C for over a year.  Dr. Nafziger's awareness of the previous delays in Green's treatment makes Dr. Nafziger's own failure to quickly address Green's concerns even more troubling.  Therefore, this court concludes that Green has alleged adequate facts against Dr. Nafziger to withstand a motion to dismiss.

### C.  Dr. Lebya

This court agrees with Magistrate Judge Tafoya's recommendation that this court deny defendants' request to dismiss the claim against Dr. Lebya.  Dr. Lebya was primarily responsible for Green's treatment from May 2005 through May 2006.  (Doc. 84 at 5.)  As Magistrate Judge Tafoya noted (Doc. 76 at 17), Green alleges that, despite his numerous requests for treatment, he received no treatment at all from Dr. Lebya from May 2005 through February 2006.  (Doc. 3 at 20.)  Further, Dr. Lebya refused to provide treatment even after being ordered to do so by Warden Wiley.  (Doc. 3 at 16.)  These allegations are sufficient to withstand a motion to dismiss.

Defendants argue that Dr. Lebya should be dismissed in part because he is no longer employed by BOP, so any declaratory or injunctive relief would be

---

[1]In his objections to the Magistrate's report and recommendation, Green alleges that Defendants never actually gave him his requested treatment.  (Doc. 83 at 7.)  This court cannot, however, rely on facts not alleged in the complaint in deciding on this motion to dismiss.

14

ineffective against Dr. Lebya. (Doc. 84 at 5-6.) The defendants neglect to mention, however, that Green has also sought both compensatory and punitive damages, for which Dr. Lebya's departure from BOP is irrelevant. (Doc. 3 at 8.)

**V. Qualified Immunity**

After recommending dismissal of all but one of the defendants, Magistrate Judge Tafoya recommended that this court deny Dr. Lebya's request for qualified immunity. (Doc. 76 at 21-24.) As this court has determined that Green's individual capacity claims against Dr. Nafziger and Warden Wiley should not be dismissed for failure to state a claim, this court must also consider those defendants' requests for qualified immunity. When determining the issue of qualified immunity on a motion to dismiss, the "[appellate] court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts . . . . All it need determine is a question of law: whether the legal norms <u>allegedly</u> violated by the defendant were clearly established at the time of the challenged actions. . . ." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998) (quoting Mitchell v. Forsyth, 472 U.S. 511, 527-28 (1985)) (emphasis added).

Green's allegations, if true, amount to violations of clearly established constitutional law. See, e.g., Erickson, 127 S.Ct. 2197 (upholding the sufficiency of plaintiff's claim against prison officials for withdrawing his Hepatitis-C treatment). Defendants are free, however, to raise the qualified immunity defense again at the summary judgment phase.

15

## V.  Exhaustion

Defendants argue that Green's claims should be dismissed for failure to exhaust the administrative remedies provided by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a) (See Doc. 26 at 22-28; Doc. 59 at 22-27.)  "The exhaustion provision of the PLRA states: 'No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a)."  Jones v. Bock, 549 U.S. 199, 204 (2007).[2]

The defendants carry the burden of demonstrating Green's failure to exhaust.  See Jones, 549 U.S. at 216 ("[F]ailure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007) ("[T]he burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

This court agrees with Magistrate Judge Tafoya's determination that "the court cannot conclude at this point in the case that Mr. Green's attempts at satisfying the grievance procedure were ineffective or incomplete."  (Doc. 76 at 11.)

---

[2]Defendant Nafziger filed no objection to the Magistrate's recommendation that the defendants have failed to establish the exhaustion defense at this stage of the proceedings.  As a result, this argument is waived by Nafziger at this stage of the proceedings.

16

Defendants argue that Green's administrative proceedings were inadequate because he did not specifically name all of the defendants at each stage of the administrative process. (See Doc. 26 at 26-28.) This argument must fail because "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones, 548 U.S. at 219. The regulations allow "inmates to exhaust their administrative remedies with a grievance that provides prison officials a fair opportunity to investigate and resolve the complaint internally even without specifically identifying wrongdoers." Kikumura v. Osagie, 461 F.3d 1269, 1284 (10th Cir. 2006) (overruled in part on other grounds as recognized in Robbins v. Oklahoma, 519 F.3d 1242, 1246-47 (10th Cir. 2008)); Johnson v. Johnson, 385 F.3d 503, 517 (5th Cir. 2004) ("[A] grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."). An inmate's duty to exhaust his administrative proceedings is, therefore, fulfilled when the officials are given adequate notice of the nature of his complaint.

Green's administrative proceedings clearly identified the nature of his dissatisfaction, and the prison's medical staff were undoubtedly aware of which parties were responsible for Green's medical treatment. Green's complaints about the "medical staff" at the prison therefore put both Dr. Lebya and Dr. Nafziger on notice of Green's dissatisfaction with his treatment. Further, in his second administrative proceeding, Green specifically mentioned his

dissatisfaction with Defendant Nafziger, and Green fully exhausted the administrative remedies available for that proceeding. (Doc. 3 at 20.)

Green also adequately exhausted his administrative remedies against Warden Wiley. Green indicated his dissatisfaction with Defendant Wiley's response to his administrative proceedings for the first time in his regional administrative appeal of his first administrative complaint. (Doc. 3 at 14.) In that administrative appeal, Green argued that "ADX Staff" claimed not to have received his request for treatment. His argument about "ADX Staff" clearly referred to the response he received from Warden Wiley, which indicated that Green had not requested any "sick call cop-outs." (Doc. 3 at 13.) Green subsequently filed a second administrative proceeding that incorporated Green's earlier appeal. Green's second administrative complaint therefore incorporated Green's earlier administrative appeal in which he argued that Warden Wiley had not adequately responded to his administrative complaints. (Doc. 3 at 19.) This second administrative proceeding was fully exhausted before Green filed his complaint with this court. He has, therefore, adequately exhausted his administrative remedies against Warden Wiley.

## VI.  Miscellaneous Issues

Green has also raised a number of collateral issues in his objections to the Magistrate Judge's Report and Recommendation. (See Docs. 83 and 86.) This court would normally decline to address these issues at all, but will briefly discuss them for the benefit of the pro se plaintiff.

First, Green reiterates his request for counsel. This court has previously affirmed the Magistrate Judge's rejection of Green's request for an attorney. (Doc. 53.) In that order, this court noted that Green would be free to renew his request for counsel if his claims survived a motion to dismiss. Now that some of his claims have survived the motion to dismiss phase, he is free to renew that request in an appropriately filed motion.

Green also attempts to add some additional defendants to his complaint. (See Doc. 83 at 5.) In a separate motion that this court referred to the Magistrate Judge Tafoya, Green sought to amend his complaint and add these defendants. (Doc. 69.) Until the Magistrate rules on that motion, these individuals are not proper defendants in this case.

## VII.  Conclusion

This court ADOPTS in part and REJECTS in part Magistrate Judge Tafoya's Report and Recommendation. This court ORDERS that all claims against the BOP and all official capacity claims against the defendants are DISMISSED. However, defendants' motions to dismiss Green's remaining Fifth and Eighth Amendment claims against Warden Wiley, Dr. Nafziger, and Dr. Lebya in their individual capacities are DENIED, and those claims may proceed.

Dated: January 21, 2009

BY THE COURT:

*s/ David M. Ebel*

UNITED STATES CIRCUIT JUDGE